1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

GLYNDA MAE BARRON,      )    No. ED CV 16-1420-PLA
)
           Plaintiff,   )    **MEMORANDUM OPINION AND ORDER**
)
      v.               )
)
NANCY BERRYHILL, ACTING    )
COMMISSIONER OF SOCIAL     )
SECURITY ADMINISTRATION,    )
)
         Defendant.   )
————————————————————————)

**I.**

**PROCEEDINGS**

Plaintiff filed this action on June 30, 2016, seeking review of the Commissioner's[1] denial
of her application for Supplemental Security Income ("SSI") payments.  The parties filed Consents
to proceed before the undersigned Magistrate Judge on July 26, 2016, and August 23, 2016.
Pursuant to the Court's Order, the parties filed a Joint Stipulation (alternatively "JS") on February
28, 2017, that addresses their positions concerning the disputed issues in the case.  The Court

---

[1]   Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy Berryhill, the current
Acting Commissioner of Social Security, is hereby substituted as the defendant herein.

1 | has taken the Joint Stipulation under submission without oral argument.

2

3 | **II.**

4 | **BACKGROUND**

5 | Plaintiff was born on October 8, 1968. [Administrative Record ("AR") at 77, 218.] She has

6 | past relevant work experience as a certified nurse assistant, care companion, and cashier. [AR

7 | at 77, 116.]

8 | On March 26, 2012, plaintiff protectively filed an application for SSI payments, alleging that

9 | she has been unable to work since January 1, 1998. [AR at 67, 218-24.] After her application was

10 | denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an

11 | Administrative Law Judge ("ALJ"). [AR at 67, 177.] A hearing was held on September 5, 2014,

12 | at which time plaintiff appeared represented by an attorney, and testified on her own behalf. [AR

13 | at 84-122.] A vocational expert ("VE") also testified. [AR at 225-20.] On November 18, 2014, the

14 | ALJ issued a decision concluding that plaintiff was not under a disability since March 26, 2012,

15 | the date the application was filed. [AR at 67-79.] Plaintiff requested review of the ALJ's decision

16 | by the Appeals Council. [AR at 62-63.] When the Appeals Council denied plaintiff's request for

17 | review on April 22, 2016 [AR at 6-11], the ALJ's decision became the final decision of the

18 | Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations

19 | omitted). This action followed.

20

21 | **III.**

22 | **STANDARD OF REVIEW**

23 | Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's

24 | decision to deny benefits. The decision will be disturbed only if it is not supported by substantial

25 | evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622

26 | F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

27 | "Substantial evidence means more than a mere scintilla but less than a preponderance; it

28 | is such relevant evidence as a reasonable mind might accept as adequate to support a

1  conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation

2  and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998)

3  (same).  When determining whether substantial evidence exists to support the Commissioner's

4  decision, the Court examines the administrative record as a whole, considering adverse as well

5  as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted);

6  see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must

7  consider the entire record as a whole and may not affirm simply by isolating a specific quantum

8  of supporting evidence.") (citation and internal quotation marks omitted).  "Where evidence is

9  susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan,

10 528 F.3d at 1198 (citation and internal quotation marks omitted); see Robbins v. Soc. Sec. Admin.,

11 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the

12 ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.")

13 (citation omitted).

14

15                                              **IV.**

16                           **THE EVALUATION OF DISABILITY**

17         Persons are "disabled" for purposes of receiving Social Security benefits if they are unable

18 to engage in any substantial gainful activity owing to a physical or mental impairment that is

19 expected to result in death or which has lasted or is expected to last for a continuous period of at

20 least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir.

21 1992).

22

23 **A.     THE FIVE-STEP EVALUATION PROCESS**

24         The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing

25 whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821,

26 828 n.5 (9th Cir. 1995), as amended April 9, 1996.  In the first step, the Commissioner must

27 determine whether the claimant is currently engaged in substantial gainful activity; if so, the

28 claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in

1   substantial gainful activity, the second step requires the Commissioner to determine whether the

2   claimant has a "severe" impairment or combination of impairments significantly limiting her ability

3   to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.

4   If the claimant has a "severe" impairment or combination of impairments, the third step requires

5   the Commissioner to determine whether the impairment or combination of impairments meets or

6   equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404,

7   subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.  If

8   the claimant's impairment or combination of impairments does not meet or equal an impairment

9   in the Listing, the fourth step requires the Commissioner to determine whether the claimant has

10  sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled

11  and the claim is denied.  Id.  The claimant has the burden of proving that she is unable to

12  perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a

13  prima facie case of disability is established.  Id.  The Commissioner then bears the burden of

14  establishing that the claimant is not disabled, because she can perform other substantial gainful

15  work available in the national economy.  Id.  The determination of this issue comprises the fifth

16  and final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at

17  828 n.5; Drouin, 966 F.2d at 1257.

18

19  **B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

20         At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since

21  March 26, 2012, the application date. [AR at 69.]  At step two, the ALJ concluded that plaintiff has

22  the severe impairments of morbid obesity; sleep apnea; bilateral ankle impairments; back pain;

23  and mood disorder.  [Id.]  At step three, the ALJ determined that plaintiff does not have an

24  impairment or a combination of impairments that meets or medically equals any of the impairments

25  in the Listing.  [Id.]  The ALJ further found that plaintiff retained the residual functional capacity

26

27

28

4

1    ("RFC")[2] to perform less than a full range of light work as defined in 20 C.F.R. § 416.967(b),[3] as

2    follows:

> [C]an lift and/or carry 20 pounds occasionally and 10 pounds frequently; she can
> stand and/or walk for two hours out of an eight-hour workday with regular breaks;
> she can sit for six hours out of an eight-hour workday with regular breaks; she is
> unlimited with respect to pushing and/or pulling, other than as indicated for lifting
> and/or carrying; she is limited to occasional postural activities, but is precluded
> f[ro]m climbing ladders, scaffolds or ropes and is unable to work at unprotected
> heights or around dangerous machinery. [Plaintiff] is limited to non-complex routine
> tasks, and is unable to perform tasks requiring hypervigilence or responsibility for
> the safety of others. [Plaintiff] is unable to perform jobs requiring public contact.

8    [AR at 70.]  At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded

9    that plaintiff is unable to perform any of her past relevant work as a certified nurse assistant, care

10   companion, or cashier. [AR at 77, 116.]  At step five, based on plaintiff's RFC, vocational factors,

11   and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the

12   national economy that plaintiff can perform, including work as a "mail clerk" (Dictionary of

13   Occupational Titles ("DOT") No. 209.687-026), "general office clerk" (DOT No. 209.562-010), and

14   "agricultural sorter" (DOT No. 521.687-086). [AR at 31, 76-79.]  Accordingly, the ALJ determined

15   that plaintiff was not disabled at any time since March 26, 2012, the date the application was filed.

16   [AR at 78.]

17   /

18   /

19   /

20   _____

21   [2]    RFC is what a claimant can still do despite existing exertional and nonexertional
limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps
22   three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which
the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149,
23   1151 n.2 (9th Cir. 2007) (citation omitted).

24   [3]    "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying
of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in
25   this category when it requires a good deal of walking or standing, or when it involves sitting most
of the time with some pushing and pulling of arm or leg controls. To be considered capable of
26   performing a full or wide range of light work, you must have the ability to do substantially all of
these activities. If someone can do light work, we determine that he or she can also do sedentary
27   work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for
long periods of time." 20 C.F.R. § 416.967(b).

28

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ erred when he:  (1) rejected the opinions of Robert H. Kounang, M.D., who examined plaintiff for purposes of determining whether she qualifies for a power wheelchair; and (2) discounted plaintiff's subjective symptom testimony.  [JS at 4.]  As set forth below, the Court agrees with plaintiff, in part, and remands for further proceedings.

## A.    MEDICAL OPINIONS

### 1.    Legal Standard

"There are three types of medical opinions in social security cases:  those from treating physicians, examining physicians, and non-examining physicians."  Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 404.1502, 404.1527.  "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant."  Lester, 81 F.3d at 830; Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citing Ryan, 528 F.3d at 1198); Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222 (9th Cir. 2010).  "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician."  Lester, 81 F.3d at 830; Ryan, 528 F.3d at 1198.

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons."  Carmickle, 533 F.3d at 1164 (citation and internal quotation marks omitted); Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006).  "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record."  Carmickle, 533 F.3d at 1164 (citation and internal quotation marks omitted); Ryan, 528 F.3d at 1198; Ghanim v. Colvin, 763 F.3d 1154, 1160-61 (9th Cir. 2014); Garrison, 759 F.3d at 1012.  The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  Reddick, 157 F.3d at 725.  The ALJ "must set forth his own interpretations and explain why they, rather than the

1  [treating or examining] doctors', are correct."  Id.

2  Although the opinion of a non-examining physician "cannot by itself constitute substantial

3  evidence that justifies the rejection of the opinion of either an examining physician or a treating

4  physician," Lester, 81 F.3d at 831, state agency physicians are "highly qualified physicians,

5  psychologists, and other medical specialists who are also experts in Social Security disability

6  evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); Soc. Sec. Ruling 96-6p; Bray v.

7  Astrue, 554 F.3d 1219, 1221, 1227 (9th Cir. 2009) (the ALJ properly relied "in large part on the

8  DDS physician's assessment" in determining the claimant's RFC and in rejecting the treating

9  doctor's testimony regarding the claimant's functional limitations).  Reports of non-examining

10  medical experts "may serve as substantial evidence when they are supported by other evidence

11  in the record and are consistent with it." Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

12

13  **2.   Dr. Kounang**

14  On May 8, 2012, Dr. Kounang evaluated plaintiff to determine if she was eligible for a power

15  wheelchair.  [AR at 509-11.]  He noted plaintiff's reports of "difficulty walking for the past 12 years

16  because of bilateral ankle weakness and pain . . . , low back, neck, and bilateral arm and knee

17  pain and weakness," swollen ankles, and spinal degenerative disease, herniated discs, and

18  pinched nerve.  [AR at 509.]  She also reported to him that at home she ambulates with a walker

19  and leg braces, and reported that "she has fallen several times because her ankles give out, even

20  when aided by the walker."  [Id.]  Dr. Kounang observed that plaintiff was walking with "bilateral

21  ankle orthosis and a walker" and that her "gait is quite safe."  [AR at 510.]  He noted that an

22  electric wheelchair/scooter "is not recommended if the functional mobility deficit can be sufficiently

23  resolved by the prescription of a cane or walker, or the patient has sufficient upper extremity

24  function to propel a manual wheelchair."  [Id.]  His evaluation found no upper extremity swelling;

25  bilateral upper extremity strength of 4/5; and bilateral lower extremity strength of 3/5. [Id.] He also

26  found that plaintiff's "condition does not allow her to walk long distances" but, because her upper

27  extremity strength was "adequate for pushing a regular wheelchair for household mobility and her

28  present gait using a walker is sufficient for walking with a walker inside the house," plaintiff "does

7

1    not meet the POV [power operated vehicle] Criteria for a power chair."  [Id.]

2        Plaintiff contends the ALJ erred by failing to acknowledge Dr. Kounang's opinion that
3    plaintiff is unable to walk long distances.  [JS at 6.]  She argues that the ALJ should have
4    explained why this significant probative evidence had been rejected.  [Id.]  She notes that Dr.
5    Kounang's opinion is supported by plaintiff's two prior surgeries on each ankle by 2009, the
6    continued significant problems she has with her ankles, and her history of falls as reflected in the
7    record.  [JS at 7 (citing AR at 313, 342, 422, 622).]  She submits that the ALJ's opinion is
8    inconsistent with Dr. Kounang's opinion "because the ALJ's opinion limits [plaintiff] to two hours
9    of standing and/or walking in an eight-hour workday . . . [and these] limits . . . do not take into
10    consideration what [plaintiff] can do *at one time*."  [JS at 8 (emphasis added).]

11        Defendant counters that Dr. Kounang's opinion that plaintiff is unable to walk long distances
12    *aligns* with the ALJ's conclusion that plaintiff can stand and walk "for no more than two hours
13    *cumulatively* in an eight-hour workday."  [JS at 9 (emphasis added).]  She notes that although the
14    ALJ cited to Dr. Kounang's opinion but did not otherwise discuss it, this was not error because the
15    ALJ discussed other record evidence supporting a limitation on extensive walking including the
16    following:  (1) plaintiff's subjective symptom testimony of pain and instability in the ankle following
17    surgery; (2) the opinion of consultative orthopedist Vincente Bernabe, D.O., whose opinion the ALJ
18    gave "little weight," as Dr. Bernabe opined that plaintiff could stand and walk up to six hours per
19    day, and did not "provide sufficient consideration of [plaintiff's] subjective complaints of limitation
20    and pain"; and (3) the ALJ's finding that plaintiff was even more restricted than suggested by the
21    opinion of State agency expert Keith Wahl, who opined plaintiff could stand and walk four hours
22    in a workday.  [JS at 9-10 (citations omitted).]  Defendant further submits that even if the ALJ
23    should have specifically discussed Dr. Kounang's opinion that plaintiff could not walk distances,
24    there was no reversible error because the ALJ did not find plaintiff "capable of performing work
25    that requires two hours of *continuous* walking (as opposed to *cumulative* over the course of the
26    workday)" [JS at 10 (second emphasis added)], and the occupations the ALJ found plaintiff could
27    perform "do not require the ability to walk long distances."  [Id.]

28        The Court agrees with defendant that even if the ALJ's failure to more specifically discuss

1  Dr. Kounang's finding regarding plaintiff's inability to walk long distances was error, the error was

2  harmless.  Plaintiff's suggestion that her RFC limitation to standing or walking two hours out of an

3  eight-hour workday means standing or walking for a *continuous* two hours [see JS at 8], is

4  unsupported.   Indeed, the Commissioner's rulings provide that light work requires "frequent"

5  standing or walking, which is defined as requiring "standing or walking, *off and on*, for a *total* of

6  approximately 6 hours of an 8-hour workday." Soc. Sec. Ruling ("SSR")[4] 83-10 (emphasis added).

7  Likewise, sedentary work, which may require "occasional" standing and walking, means that

8  "*periods* of standing or walking should generally *total no more than* about 2 hours of an 8-hour

9  workday." Id. (emphasis added).  Thus, standing or walking need not be continuous.  Accordingly,

10 the ALJ's determination that plaintiff can "perform less than a full range of light work," in that she

11 can only "stand and/or walk for two hours out of an eight-hour workday," is not inconsistent with

12 Dr. Kounang's opinion that plaintiff cannot walk long distances.

13        Additionally, although plaintiff argues that the positions of general clerk and mail clerk "may

14 include tasks which may involve walking long distances" [JS at 12], she does not argue -- nor can

15 she -- that the agricultural sorter position requires such walking or is otherwise inconsistent with

16 her RFC.  Thus, even assuming that the positions of general clerk and mail clerk involve walking

17 "long distances," the position of agricultural sorter -- a sedentary position that "may involve walking

18 or standing for brief periods of time" but no more than "occasionally"[5] -- is consistent with plaintiff's

19

_____

20    [4]   "The Commissioner issues [SSRs] to clarify the Act's implementing regulations and the
      agency's policies.  SSRs are binding on all components of the [Social Security Administration].
21    SSRs do not have the force of law.  However, because they represent the Commissioner's
      interpretation of the agency's regulations, we give them some deference.  We will not defer to
22    SSRs if they are inconsistent with the statute or regulations."  Holohan v. Massanari, 246 F.3d
      1195, 1202 n.1 (9th Cir. 2001) (citations omitted).
23

24    [5]   This position is described as follows:

25        Removes defective nuts and foreign matter from bulk nut meats: Observes nut
26        meats on conveyor belt, and picks out broken, shriveled, or wormy nuts and foreign
          matter, such as leaves and rocks.  Places defective nuts and foreign matter into
27        containers.

28                                                                              (continued...)

                                              9

1  RFC.  Because plaintiff can perform work as an agricultural sorter, this job was sufficient to

2  support the ALJ's step five determination.  See Gallo v. Comm'r of Soc. Sec. Admin., 449 F. App'x

3  648, 650 (9th Cir. 2011) ("Because the ALJ satisfied his burden at Step 5 by relying on the VE's

4  testimony about the Addresser job, any error that the ALJ may have committed by relying on the

5  testimony about the 'credit checker' job was harmless") (citing Carmickle, 533 F.3d at 1162).

6  Thus, even if the ALJ erred in failing to more specifically discuss Dr. Kounang's opinion that

7  plaintiff is unable to walk long distances, that error was harmless.

8      Remand is not warranted on this issue.

9

10 **B.    SUBJECTIVE SYMPTOM TESTIMONY**

11     Plaintiff contends the ALJ failed to articulate legally sufficient reasons for rejecting plaintiff's

12 subjective symptom testimony.  [JS at 13.]

13     "To determine whether a claimant's testimony regarding subjective pain or symptoms is

14 credible, an ALJ must engage in a two-step analysis."[6]  Lingenfelter v. Astrue, 504 F.3d 1028,

15

16     [5](...continued)
17 DOT No. 521.687-086.

18     [6]   On March 28, 2016, after the ALJ's assessment in this case, SSR 16-3p went into effect.
   See SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016).  SSR 16-3p supersedes SSR 96-7p, the
19 previous policy governing the evaluation of subjective symptoms. Id. at *1.  SSR 16-3p indicates
   that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our
20 regulations do not use this term." Id.  Moreover, "[i]n doing so, we clarify that subjective symptom
   evaluation is not an examination of an individual's character[;] [i]nstead, we will more closely follow
21 our regulatory language regarding symptom evaluation." Id.  Thus, the adjudicator "will not assess
   an individual's overall character or truthfulness in the manner typically used during an adversarial
22 court litigation.  The focus of the evaluation of an individual's symptoms should not be to determine
   whether he or she is a truthful person."  Id. at *10.  The ALJ is instructed to "consider all of the
23 evidence in an individual's record," "to determine how symptoms limit ability to perform work-
   related activities."  Id. at *2.  The ALJ's 2014 decision was issued before March 28, 2016, when
24 SSR 16-3p became effective, and there is no binding precedent interpreting this new ruling
   including whether it applies retroactively.  Compare Ashlock v. Colvin, 2016 WL 3438490, at *5
25 n.1 (W.D. Wash. June 22, 2016) (declining to apply SSR 16-3p to an ALJ decision issued prior to
   the effective date), with Lockwood v. Colvin, 2016 WL 2622325, at *3 n.1 (N.D. Ill. May 9, 2016)
26 (applying SSR 16-3p retroactively to a 2013 ALJ decision); see also Smolen, 80 F.3d at 1281 n.1
27 (9th Cir. 1996) ("We need not decide the issue of retroactivity [as to revised regulations] because
28                                                                              (continued...)

10

1035-36 (9th Cir. 2007).  "First, the ALJ must determine whether the claimant has presented

objective medical evidence of an underlying impairment 'which could reasonably be expected to

produce the pain or other symptoms alleged.'"  Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d

1090, 1102 (9th Cir. 2014) (quoting Lingenfelter, 504 F.3d at 1036) (internal quotation marks

omitted).  If the claimant meets the first test, and the ALJ does not make a "finding of malingering

based on affirmative evidence thereof" (Robbins, 466 F.3d at 883), the ALJ must "evaluate the

intensity and persistence of [the] individual's symptoms . . . and determine the extent to which

[those] symptoms limit his . . . ability to perform work-related activities . . . ."  SSR 16-3p, 2016 WL

1119029, at *4.  An ALJ must provide specific, clear and convincing reasons for rejecting a

claimant's testimony about the severity of his symptoms.  Treichler, 775 F.3d at 1102; Benton v.

Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003).

Where, as here, plaintiff has presented evidence of an underlying impairment, and the ALJ

did not make a finding of malingering [see generally AR at 72-76], the ALJ's reasons for rejecting

a claimant's credibility must be specific, clear and convincing.  Burrell v. Colvin, 775 F.3d 1133,

1136 (9th Cir. 2014) (citing Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012)); Brown-Hunter

v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015).  "General findings [regarding a claimant's

credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what

evidence undermines the claimant's complaints."  Burrell, 775 F.3d at 1138 (quoting Lester, 81

F.3d at 834) (quotation marks omitted).  The ALJ's findings "'must be sufficiently specific to allow

a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible

---

[6](...continued)

the new regulations are consistent with the Commissioner's prior policies and with prior Ninth Circuit case law") (citing Pope v. Shalala, 998 F.2d 473, 483 (7th Cir. 1993) (because regulations were intended to incorporate prior Social Security Administration policy, they should be applied retroactively)).  Here, SSR 16-3p on its face states that it is intended only to "clarify" the existing regulations.  However, because the ALJ's findings regarding this issue fail to pass muster irrespective of which standard governs, and neither party specifically contends that SSR 16-3p should apply herein [see JS at 14 n.1 (plaintiff acknowledges that SSR 16-3p superseded SSR 96-7p but "does not contend that the new ruling defeated any reliance on the old ruling"), 20 (defendant's response cites to SSR 96-7p)], the Court need not resolve the retroactivity issue. Notwithstanding the foregoing, SSR 16-3p shall apply on remand.

1   grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" Brown-Hunter,

2   806 F.3d at 493 (quoting Bunnell v. Sullivan, 947 F.2d 345-46 (9th Cir. 1991) (en banc)).  A

3   "reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection

4   of a claimant's allegations of disabling pain."  Bunnell, 947 F.2d at 346.  As such, an "implicit"

5   finding that a plaintiff's testimony is not credible is insufficient.  Albalos v. Sullivan, 907 F.2d 871,

6   874 (9th Cir. 1990) (per curiam).

7           Here, the ALJ found plaintiff's subjective symptom allegations to be "less than fully credible"

8   [AR at 71] for the following reasons:  (1) she has a history of incarceration for possession,

9   prostitution, and armed robbery, and served two years in prison and one year in jail; (2) she

10   worked "only sporadically prior to the alleged disability onset date, which raises a question as to

11   whether [plaintiff's] continuing unemployment is actually due to medical impairments"; (3) she

12   came to the hearing with a walker, "but there was no objective basis for the walker"; (4) although

13   she was (a) hospitalized in a psychiatric ward once in 2009 for severe depression, (b) received

14   mental health outpatient services in 2010 for six months, and (c) "underwent surgery of her

15   ankle,"[7] she has not "received the type of medical treatment one would expect for a totally disabled

16   individual"; and (5) her daily activities "are not limited to the extent one would expect," and "[s]ome

17   of the physical and mental abilities and social interactions required in order to perform these

18   activities are the same as those necessary for obtaining and maintaining employment." [AR at 71-

19   72.]

20

21           **1.      Criminal History**

22           An ALJ may rely upon a claimant's convictions for crimes of moral turpitude as part of a

23   credibility determination. Albidrez v. Astrue, 504 F. Supp. 2d 814, 822 (C.D. Cal. 2007) (in making

24   a credibility determination, ALJ's reliance on prior felony convictions is limited to convictions

25   involving moral turpitude); see also Hardisty v. Astrue, 592 F.3d 1072, 1080 (9th Cir. 2010) (in

---

27           [7]    Plaintiff testified that she has had two surgeries on each ankle, and that sometime after the
    surgeries she broke her right ankle due to a fall when her ankle rolled while walking with a walker.
28   [AR at 95-96.]

1   ruling on an Equal Access to Justice Act request, the court held the ALJ's credibility determination

2   was substantially justified when it was based, *among other factors*, on the claimant's prior criminal

3   convictions).

4         Here, the ALJ merely noted that plaintiff had a "history of incarceration for possession,

5   prostitution and armed robbery and served two years in prison and one year in jail." [AR at 71

6   (citing AR at 491 (noting that plaintiff reported she had been "arrested for several offenses

7   including possession, prostitution, and armed robbery as a teenager,"[8] and that she was last

8   arrested in approximately 1994)).] In an intake form for a voluntary hold, plaintiff admitted she was

9   last in prison for possession for sale in 1992, and was last incarcerated for possession in 2006.

10   [AR at 560.] The ALJ did not specifically state that these past convictions involved crimes of moral

11   turpitude,[9] or that he actually considered plaintiff's criminal history when he determined the weight

12   to give plaintiff's subjective symptom testimony. However, by virtue of even mentioning her past

13   history, he arguably impliedly considered it. This is not a case where the "government's adverse

14   credibility finding was substantially justified because *all of the inferences upon which it rested had*

15   *substance in the record*," Hardisty, 592 F.3d at 1080 (emphasis added), and, standing alone, the

16   Court finds that the ALJ's general reliance on plaintiff's criminal history, without more, does not

17   provide a specific, clear and convincing reason for discounting plaintiff's credibility.

18

19       **2.    Work History**

20         The ALJ noted that plaintiff worked only sporadically prior to the alleged disability onset

21

22

23       [8]    As plaintiff was born in 1968, she was a teenager between 1981 and 1987.

24       [9]    A crime of moral turpitude is one that involves elements that go to honesty and truthfulness,
or that indicates a "readiness to do evil." See, e.g., Simmons v. Massanari, 264 F.3d 751, 754,

25   756 (9th Cir. 2001) (finding that an ALJ properly rejected a claimant's subjective complaints, in
part, because he served two prison terms for forgery); Albidrez, 504 F. Supp. 2d at 822 (finding

26   consideration of crimes involving moral turpitude, such as showing a false ID to a peace officer,
as well as violent crime of attempted robbery, properly considered as basis for adverse credibility

27   determination); McKnight v. Comm'r of Soc. Sec., 2013 WL 3773864, at *10 (E.D. Cal. July 17,
2013) (burglary is a crime of moral turpitude because it satisfies the threshold of a crime indicating

28   a readiness to do evil) (citation omitted).

date, "which raises a question as to whether [plaintiff's] continuing unemployment is actually due to medical impairments." [AR at 71.] Plaintiff points out that the ALJ did not "appear to take into consideration the fact that [plaintiff] has had seven children."[10] [JS at 17.] Defendant does not address this issue. [See generally JS at 19-23.]

In weighing a claimant's credibility, an ALJ may consider the claimant's prior work record and efforts to work. SSR 96-7p; see also Thomas, 278 F.3d at 958-59 (a claimant's "spotty" work history and failure to give maximum effort during physical evaluations supported adverse credibility determination). Here, the ALJ's vague reference to plaintiff's allegedly "sporadic" work history prior to the 1998 alleged onset date -- during which time she was apparently also raising a number of her seven children -- and his failure to explain how plaintiff's allegedly "sporadic" employment prior to the 1998 onset date impacts her 2014 testimony regarding her physical and mental impairments, does not clearly and convincingly detract from her credibility.

Accordingly, the Court cannot conclude that this was a specific, clear and convincing reason to discount plaintiff's subjective statements.

### 3.     Use of a Walker at the Hearing

The ALJ also discounted plaintiff's subjective symptom testimony because he found "no objective basis for the walker" she brought with her to the hearing. [AR at 71.] Plaintiff notes that the walker had been prescribed [JS at 17 (citing AR at 483, 510)], that she has had multiple surgeries on both ankles and her x-rays continue to show evidence of prior fracture, and that medical records show that she has lumbar spine stenosis and possible nerve impingement. [Id. (citing AR at 579, 610).] Defendant does not specifically address this issue [see generally JS at 19-23], although she notes that "the consultative orthopedist who examined Plaintiff in August 2012 observed that she could move about without an assistive device." [JS at 22 (citing AR at 499).] That examiner also noted, however, that plaintiff "walks with a mild limp," "is unable to toe-

---

[10]   Plaintiff testified at the hearing that she has seven children and the sixth child was born in 2002. [AR at 90.]

walk, but she can heel-walk," would not squat and rise, and "has a slow deliberate pace." [AR at 499.]  The fact that plaintiff was also able to "move in and out of the office and examination room without any assistive device" during this August 27, 2012, examination such that the consultative examiner concluded that an assistive device was "[n]ot medically necessary," does not detract from the fact that a few days before, on August 23, 2012, her treating provider had prescribed a walker.  [AR at 483.]

Based on the foregoing, the Court cannot conclude that this was a specific, clear and convincing reason to discount plaintiff's subjective symptom statements.

### 4.    Objective Medical Evidence and Conservative Treatment

The ALJ found that plaintiff has not "received the type of medical treatment one would expect for a totally disabled individual."  [AR at 71.]  However, at the same time he made this statement, he also noted that plaintiff was (a) hospitalized in a psychiatric ward once in 2009 for severe depression, (b) received mental health outpatient services in 2010 for six months, and (c) "underwent surgery of her ankle[s]."  [Id.]  The ALJ also noted that the "treatment records reveal [plaintiff] received routine, conservative and non-emergency treatment since the alleged onset date."  [AR at 72.]  Plaintiff notes that at times she had "difficulty affording treatment" [JS at 17 (citing AR at 310)], and states that "[i]t is unclear what else the ALJ expects" from her in terms of treatment.  [Id.]

While a lack of objective medical evidence supporting a plaintiff's subjective complaints cannot provide the only basis to reject a claimant's subjective symptom testimony (see Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)), it is one factor that an ALJ can consider in evaluating symptom testimony.   See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor the ALJ can consider in his credibility analysis."); accord Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).  Additionally, an ALJ may properly rely on the fact that only routine and conservative treatment has been prescribed.  Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995).  "Conservative treatment" has been characterized by the Ninth Circuit as, for example,

1    "treat[ment] with an *over-the-counter pain medication*" (see, e.g., Parra v. Astrue, 481 F.3d 742,

2    751 (9th Cir. 2007) (emphasis added); Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008)

3    (holding that the ALJ properly considered the plaintiff's use of "conservative treatment including

4    physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve

5    stimulation unit, and a lumbosacral corset")), or a physician's failure "to prescribe . . . any serious

6    medical treatment for [a claimant's] supposedly excruciating pain." Meanel v. Apfel, 172 F.3d

7    1111, 1114 (9th Cir. 1999).

8            Here, however, the ALJ merely stated his conclusion that the medical treatment was not

9    "the type of treatment one would expect for a totally disabled individual," and that her treatment

10   had been routine, conservative, and "non-emergency," but did not explain what treatment he would

11   have expected.  As the Ninth Circuit recently held, "an ALJ's 'vague allegation' that a claimant's

12   testimony is 'not consistent with the objective medical evidence,' without any 'specific finding in

13   support' of that conclusion, is insufficient." Treichler, 775 F.3d at 1103 (citation omitted).  The

14   "ALJ must identify the testimony that was not credible, and specify 'what evidence undermines the

15   claimant's complaints.'" Id. (citation omitted); Brown-Hunter, 806 F.3d at 493.  The ALJ did not

16   identify the testimony he found not credible and "link that testimony to the particular parts of the

17   record" supporting his non-credibility determination. Brown-Hunter, 806 F.3d at 494.  In short,

18   "[t]his is not the sort of explanation or the kind of 'specific reasons' we must have in order to review

19   the ALJ's decision meaningfully, so that we may ensure that the claimant's testimony was not

20   arbitrarily discredited," nor can the error be found harmless.  Id. at 493 (rejecting the

21   Commissioner's argument that because the ALJ set out his RFC and summarized the evidence

22   supporting his determination, the Court can infer that the ALJ rejected the plaintiff's testimony to

23   the extent it conflicted with that medical evidence, because the ALJ "never identified *which*

24   testimony [he] found not credible, and never explained *which* evidence contradicted that

25   testimony") (citing Treichler, 775 F.3d at 1103; Burrell, 775 F.3d at 1138).

26           Additionally, the ALJ's summary of the medical evidence does not provide support for his

27   conclusion that plaintiff had received "routine, conservative and non-emergency treatment since

28   the alleged onset date."  [AR at 72; see also AR at 72-76.]  The records reviewed by the ALJ

reflect complaints of chronic pain and instability following reconstructive surgery on plaintiff's ankles in 2007; reports of a 2009 ankle injury necessitating prescription of a lace-up ankle support and physical therapy strengthening exercises; a Lidocaine injection in the left elbow; "multiple therapeutic modalities to address her back pain in 2009"; prescriptions for "unusually high levels of narcotic and/or Benzodiazepines"; March 2012 emergency treatment for chronic pain, anxiety, and depression; clinical records from 2012 to 2014 showing severe degenerative changes of the thoracic spine; degenerative changes with mild disc space narrowing and spurring of the lumbar spine; soft tissue swelling in the ankles; probable tenosynovitis in the right ankle; post-traumatic and post-surgical changes in plaintiff's ankles; degenerative disc disease and neural foraminal narrowing of the right and left sides of the cervical spine; Eustachian tube dysfunction; hospitalization in 2010 with suicidal ideations and reported panic attacks as well as a herniated disc; diagnosis of mood disorder; treatment for depression and anxiety, and admission "as a 5150" reporting suicidal ideations and auditory hallucinations, and exhibiting a dysphoric, depressed mood; and multiple psychiatric evaluations and treatment related to her bipolar I disorder.  [See AR at 72-75 (citations omitted).]

Thus, this was not a specific, clear and convincing reason for discounting plaintiff's subjective symptom testimony.

### 5.    Daily Activities

The ALJ found plaintiff's daily activities "are not limited to the extent one would expect," and "[s]ome of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment." [AR at 71-72.]  He concluded that her "ability to participate in . . . activities" such as caring for her children, preparing simple meals, performing self-care and simple chores that do not require bending, going to the store, and running errands, "diminishes the credibility of [plaintiff's] allegations of functional limitations."  [Id.]

An ALJ may discredit testimony when a plaintiff reports participation in everyday activities indicating capacities that are transferable to a work setting.  Molina, 674 F.3d at 1113.  However,

"[e]ven where those activities suggest some difficulty functioning, they may be grounds for discrediting [plaintiff]'s testimony to the extent that they contradict claims of a totally debilitating impairment." Id. (citing Turner, 613 F.3d at 1225; Valentine, 574 F.3d at 693).

Plaintiff contends that the ALJ did not take into account that she uses an electric cart if she goes out to the store, and that she can do housework "in very short spurts but receives help from her children." [JS at 18 (citing AR at 105, 112-13).] The ALJ does not explain how plaintiff's level of activity describes a person capable of engaging in even basic work activity or how it is inconsistent with plaintiff's subjective symptom testimony. Additionally, plaintiff's reported level of activity clearly *does* reflect that she has difficulties in performing her daily activities.

Thus, this was not a specific, clear and convincing reason for discounting plaintiff's subjective symptom testimony.

### 6.    Conclusion

Based on the foregoing, the Court finds the ALJ's subjective symptom testimony determination to be virtually indistinguishable from the subjective symptom testimony determination rejected by the Ninth Circuit in Brown-Hunter. As in Brown-Hunter, the ALJ here "simply stated [his] non-credibility conclusion and then summarized the medical evidence supporting [his] RFC determination." Brown-Hunter, 806 F.3d at 494. Although the ALJ also summarized plaintiff's daily activities, he did not identify the testimony he found not credible, and "link that testimony to the particular parts of the record" supporting his non-credibility determination. Id. In short, "[t]his is not the sort of explanation or the kind of 'specific reasons' we must have in order to review the ALJ's decision meaningfully, so that we may ensure that the claimant's testimony was not arbitrarily discredited," nor can the error be found harmless. Id. (rejecting the Commissioner's argument that because the ALJ set out his RFC and summarized the evidence supporting his determination, the Court can infer that the ALJ rejected the plaintiff's testimony to the extent it conflicted with that medical evidence, because the ALJ "never identified *which* testimony [he] found not credible, and never explained *which* evidence contradicted that testimony") (citing Treichler, 775 F.3d at 1103, Burrell 775 F.3d at 1138).

# VI.

## REMAND FOR FURTHER PROCEEDINGS

The Court has discretion to remand or reverse and award benefits.  <u>McAllister v. Sullivan</u>, 888 F.2d 599, 603 (9th Cir. 1989).  Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  See <u>Lingenfelter</u>, 504 F.3d at 1041; <u>Benecke v. Barnhart</u>, 379 F.3d 587, 595-96 (9th Cir. 2004).  Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate.  See <u>Benecke</u>, 379 F.3d at 593-96.

In this case, there are outstanding issues that must be resolved before a final determination can be made.  In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings.  First, because the ALJ failed to provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting plaintiff's subjective symptom testimony, the ALJ on remand, in accordance with SSR 16-3p, shall reassess plaintiff's subjective allegations and either credit her testimony as true, or provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting or rejecting any testimony.  Finally, the ALJ shall reassess plaintiff's RFC and determine, at step five, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the national economy that plaintiff can still perform.[11]

/

/

/

/

----

[11]   Nothing herein is intended to disrupt the ALJ's step four finding that plaintiff is unable to return to her past relevant work.

**VII.**

**CONCLUSION**

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED:  March 20, 2017

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

20